UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
UNITED STATES OF AMERICA

    -against-                                                                    Dkt #: 18-CR-00218

TYLER TORO

                      Defendant.
-------------------------------------------------------------------x

---

# SENTENCING MEMORANDUM

---

BRYAN KONOSKI
Treyvus & Konoski, P.C.
*Attorney(s) for the Defendant*
305 Broadway, 14th Floor
New York, NY 10007
(212) 897-5832
Fax: (718) 668-1094
Email: bkonoski@aol.com

## Table of Contents

I. THE DEFENDANTS PLEA AND SENTENCING GUIDELINE CACULATION............................................................3

II. A SENTENCE OF TIME SERVED IS APPROPRIATE DUE TO THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT. (18 U.S.C. § 3553(a)(1)) ...............................................................4

    A. Mr. Toro has extensive support from family and friends. ................................4

    B. Tyler Toro is a talented Artist, Musician, and Chef. ........................................6

    C. Mr. Toro has extensive support from family and friends. ................................7

    D. The breakdown of his parents' relationship was traumatic to Tyler Toro. ..........................................................................................8

    E. Despite Tyler's achievements discussed above, he developed a substance abuse problem, which is a basis for a variance. ..........................................................................8

    F. Tyler Toro's accepted responsibility in this case. .........................................10

    G. Tyler Toro has a no disciplinary history while in custody. ...............................10

III. A SENTENCE OF 5- YEARS' INCARCERATION IS APPROPRIATE DUE TO THE NATURE AND CIRCUMSTANCES OF THE OFFENSE (18 U.S.C. § 3553(a)(1)).....................8

IV. A SENTENCE OF 5-YEARS' INCARCERATION IS APPROPRIATE (18 U.S.C. § 3553(a)(2))..................................................11

    (1) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.................11

    (2) To afford adequate deterrence to criminal conduct...................................11

    (3) To protect the public from further crimes of the defendant.........................12

V. CONCLUSION.............................................................................................12

# Exhibits

Reference Letters ………………...……………………………………………………..A

Hand Made Cards ………………..……………………………………………………..B

Artwork ………………...………………………………………………………………..C

Music Achievement Certificate and Jazz Certificate ………………………………….D

Benedicts Iron Chef Competition ……………………………………………………...E

Leadership Awards ……………………………………………………………………..F

Honor Roll Certificates ………………………………………………………………...G

DreamYard Action Project participation …………………………………………….H

## I.
## THE DEFENDANT'S PLEA AND
## SENTENCING GUIDELINE CALCULATION

Defendant, TYLER TORO, will be sentenced pursuant to his guilty plea under Counts 1 through 3 of the Indictment. Count 1 charged the defendant with conspiring to the making of firearms in violation of 26 USC §§ 5822, 5861(f) and 5871, and the possession of unregistered firearms in violation of 26 USC §§ 5861(d) and 5871. Count 2 charged the defendant with manufacturing and altering, and aiding and abetting the manufacturing and altering of destructive devices in violation of 26 USC §§ 5822, 5861(f), and 5871. Count 3 charged the defendant with possession of unregistered destructive devices in violation of 26 USC §§ 5861(d) and 5871.

Pursuant to a written plea agreement with the Government, the parties stipulated that the Total Offense Level for Mr. Toro's conduct was 19, and that his Criminal History Category was I, yielding a Guidelines sentence range of 30-37 months' imprisonment. The Probation Office also determined that this Guideline Range is accurate. (*See* PSR, Pg. 4, ¶ 16).

On behalf of the defendant, I offer this sentencing memorandum to assist the Court in arriving at a sentence "sufficient but not greater than necessary" to satisfy the goals of sentencing as codified at 18 U.S.C. § 3553(a)(2).

Based on all of the factors discussed within this memorandum, it is respectfully requested that the court sentence Mr. Toro to Time Served.

II.

## A SENTENCE OF *TIME SERVED* IS APPROPRIATE DUE TO THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT. (18 U.S.C. § 3553(a)(l)).

Congress has directed sentencing courts to consider "the history and characteristics" of the defendant when imposing sentence. 18 U.S.C. § 3553(a)(l).

There is certainly no doubt that when someone commits a crime in our society, there are repercussions. Nothing in this memorandum to the court should be interpreted as undermining the seriousness of the offenses that Mr. Toro admitted to committing. However, based on my communications with Mr. Toro, the content of the PSR, and the content of the attached Exhibits, I believe that leniency by this Honorable Court is justified in this case. Specifically, I am asking this Honorable Court to sentence Mr. Toro to Time Served. When fully considering "the history and characteristics" of the defendant, in addition to all other factors discussed in this memorandum, Time Served is the appropriate sentence.

### A. Mr. Toro has extensive support from family and friends.

Tyler Toro has extensive support from family and friends. This is demonstrated by character and reference letters that are attached to this sentencing submission. The reference letters attached are from:

- Carmen Melendez (mother).
- Tennille Black (a co-worker of Mr. Toro's mother, who became acquainted with Tyler during summer and winter breaks from high school and college).
- Eve Melendez (Tyler's Aunt and Godmother).
- Sonia Toro (Tyler Toro's Aunt).
- Ricardo Toro (Tyler's father).
- Michael Schwartz (a friend of the family).

- Jay Rhoderick (a former teaching artist with DreamYard project in the Bronx, who was familiar with Mr. Toro from 2005 through 2008).

- Rachel Pietropaolo (Family friend who has known Tyler for approximately 10 years).

- Jonathan Bruce (a colleague of Tyler's mother who was acquainted with Tyler during winter and summer school breaks).

- Debra Fergerson (a colleague of Tyler's mother who was acquainted with Tyler).

All of these letters demonstrate that Tyler is talented and is, generally speaking, a person of good moral character despite the instant charges. Some excerpts from these letters are set forth below.

His mother explains that Tyler was enrolled in art and music classes and fell in love with the piano. Additionally, he is a chef and loves to cook. In October of 2017, Tyler and his brother made plans to move to Florida to move open a culinary business; a food trick in Miami. (See Carmen Melendez letter).

Eve Melendez, Tyler's Aunt, explains that "living in their household was always an inspiration for me to hear and experience first-hand all of Tyler's academic and creative accomplishments." She also explains, "Tyler always excelled in academics, as well as creatively, whether it was playing the piano, photography, writing, or acting." (See Eve Melendez letter).

Sonia Toro also tells us that Tyler "received outstanding awards for all . . . academic studies. . .." Also, "Tyler plays several musical instruments and loves to cook". She further explains that "Tyler is kind, humble, loving, a humanitarian, a good son." (See Sonia Toro letter).

Tyler's father, Ricardo Toro, states, "Tyler is the model son, since his birth he has been the center of attention. He's intelligent, charismatic, and an avid piano player. Tyler is well liked and loved to all who come to know him." (See Ricardo Toro letter).

All reference letters are attached hereto as Exhibit A.

To also demonstrate that Tyler is a caring and loving person, there are two hand-made cards that he and his brother prepared for their mother.

One of the hand-made cards reads, "Merry Christmas Mama Bird! Thank you for all those years where you filled the role of Santa Claus for the birds. Christmas is about giving to those who you love, and we want to thank you for everything you helped us accomplish! We couldn't have done it without you! We love you very much, hope your Christmas is fantastic!"

The second hand-made card reads, "Hey Mom! How you doin'? It's me Christian and Tyler. We miss you very much! It's very hot down here, but the people are soo nice surprisingly! New Orleans is very beautiful, but so messed up at the same time. The 9th ward was the place that got messed up the most. It's so depressing because the Ghetto area is still messed up with the city is being rebuilt. Other than that, it's pretty nice down here. Hanging out with the fellas and chillin'. The food is spicy, but irresistible. It's delicious. We miss you very much. See you soon. Hugs and kisses, we love you soo much!!!"

The two hand made cards are attached hereto as Exhibit B.

### B. Tyler Toro is a talented Artist, Musician, and Chef.

"Tyler was drawn to the arts thorough his mother's siblings. His aunt was an actor and his mother was an artist. They would encourage Christian and Tyler to draw and perform. Tyler has played piano since elementary school and still enjoys playing recreationally." See PSR ¶ 59. Copies of some of his artwork is attached hereto as Exhibit C. He also received a "Music

Achievement Certification" for his accomplishment on Keyboard, [as well as a Certificate of Excellence for Jazz Band.  See Exhibit D.  In 2011 he received a certificate for "Benedict's Iron Chef", which recognized his talents as a chef.  See Exhibit E.

### C. Tyler Toro has demonstrated leadership skills and scholastic achievement.

According to the PSR, "Ms. Melendez made sure that [both Christian and Tyler] worked hard and set high academic standards for the boys."  See PSR ¶ 58.  This is supported by a variety of awards and certificates received by Tyler.  In 2010, Tyler Toro received a certificate for being the "Nicest VP of the Year" for "always having a good attitude and being a great backbone for the president".  In 2005, he received an achievement award for "outstanding achievement in leadership".  See Exhibit F.  Moreover, throughout the years, Tyler has also received a variety of awards for being a member of the "honor roll", or other certificates of excellence or achievement.  See Exhibit G.

In 2008, Tyler received a certificate for his participation in the DreamYard Action Project.  The "DreamYard Action Project was created to address the lack of artistic programming, leadership opportunities, and programs for urban high school youth.  Action is a four-year arts and civic engagement program composed of a summer of intensive and year-round Saturday program.  The Action Project empowers young people by developing their talents in the arts; enabling a strong and confident sense of self and the ability to engage in positive dialogue; fostering leadership capacity; and setting a solid course of progress to institutions of higher learning and meaningful careers."  See Exhibit H.

Prior to joining the DreamYard Action Project, Tyler received a reference letter from the Principal of his school.  In part, the letter reads, "I would like to recommend Tyler Toro for your program.  While enrolled in my school, this student demonstrated excellent academic

showmanship and team working abilities. Tyler is an achiever, a trained peer mediator and is an honro roll student. As the Principal of this school, I was able to observe and determine that the student is ready and willing to go the extra mile to achieve in his life." See Exhibit H.

Following Tyler's success through High School, he went directly into college following his high school graduation. See PSR ¶ 59.

### D. The breakdown of his parents' relationship was traumatic to Tyler Toro.

Tyler Toro's father remained in the household until Tyler was eight years old. Tyler recalled seeing the breakdown of his parent's relationship, which included seeing his parents yelling and cursing at each other. Tyler later came to understand that the primary cause of their separation was his father's substance abuse and alcoholism. Years later, his father's substance abuse problems continued to impact the twins. A particularly traumatic memory was when Mr. Toro arrived at their mother's apartment one day while they were home alone during summer break. Mr. Toro was palid and began vomiting profusely. The brothers believed their father was going to die and were afraid. He and his brother administered to their father and helped him through the incident. They later learned that Mr. Toro was likely suffering form an overdose or a reaction to tainted drugs. Their mother also struggled with alcoholism, although this was less evident than their father's problems. See PSR ¶ 57.

### E. Despite Tyler's achievements discussed above, he developed a substance abuse problem, which is a basis for a variance.

Tyler has an admitted history of alcohol consumption and drug use. He stated that he began consuming alcohol at the age of 18, at social gatherings and during holiday celebrations. His use increased during his college years and his heavy alcohol consumption continued until he was approximately 24 years old. This typically consisted of drinking a six-pack of tallboy sized beers (24 oz) for or five days a week. He began smoking marijuana at the age of 21. He stated that the

first few times he smoked, he experienced panic attacks. However, over time, he began to feel like smoking marijuana made him feel less anxious in social situation. H eonly smoked sporadically until approximately 2016, when he broke up with his first serious girlfriend. He has smoked approximately a half-joint daily since that time. Tyler tried "Molly" once at a concert in 2015. He has never previously attended drug treatment but stated that he would like to try it." See PSR ¶ 66.

The fact that Mr. Toro is amenable to future drug and alcohol treatment warrants a downward variance. *See United States v. Nastri*, 633 F.App'x 57, 59 (2d Cir. 2016)("[I]t is well within a district court's discretion to determine whether addiction is the cause for leniency or merely an indication that he will 'persist [ ] in a life of reckless, criminal, dangerous, destructive, [and] deceitful conduct.'")(*quoting United States v. Douglas*, 713 F.3d 694, 703 (2d Cir. 2013); *see also*, *United States v. Walker*, No. 2:13-CR-379, 2017 WL 2198194, at *16 (D. Utah May 18, 2017)("While [t]he initial decision to take drugs is mostly voluntary . . . when drug abuse takes over, a person's ability to exert self-control can become seriously impaired. . . . Stated plainly, addiction biologically robs drug abusers of their judgment, causing them to act impulsively and ignore the future consequences of their actions; *United States v. Hendrickson*, 25 F.Supp.3d 1166, 1172-73 (N.D. Iowa 2014)("By physically hijacking the brain, addiction diminishes the addict's capacity to evaluate and control his or her behaviors. Rather than rationally assessing the costs of their actions, addicts are prone to act impulsively without accurately weighing future consequences. This is certainly true for Hendrickson, whose criminal history coincides with, and directly relates to, periods of drug abuse"); *but see* U.S.S.G. § 5H1.4 ("Drug . . . dependence or abuse ordinarily is not a reason for a downward departure. Substance abuse is highly correlated to an increase in propensity to commit crime.").

### F. Tyler Toro's accepted responsibility in this case.

It is also important to note that Mr. Toro accepted responsibility for his actions. He admitted wrongdoing, pled guilty, and stands before the Court for sentencing. The fact that he has accepted responsibility for his actions in a timely manner should be a factor for the Court to consider. Certainly, a defendant who timely accepted responsibility is more apt to rehabilitate.

### G. Tyler Toro has a no disciplinary history while in custody.

According to the PSR, Mr. Toro has no disciplinary history since he has been incarcerated. See PSR ¶ 18.

A defendant's post-incarceration conduct should be heavily weighed in assessing deterrence, protection of the public, and rehabilitation under 18 USC § 3553(a)(2)(B)-(D). *See Pepper v. United States*, 131 S. Ct. 1229, 1242 (2011) *quoting United States v. McMannus*, 496 F.2d 846, 853 (8th Cir. 2007). Mr. Toro's post-arrest conduct has been exemplary and demonstrates that he does not require incarceration beyond the required mandatory minimum in order to properly rehabilitate and refrain from future criminal conduct. Based on the generally good behavior that he has exhibited while incarcerated, it can be concluded that a sentence of Time Served will continue to provide adequate deterrence to Mr. Toro to avoid further criminal conduct.

### III.

### A SENTENCE OF *TIME SERVED* IS APPROPRIATE DUE TO THE NATURE AND CIRCUMSTANCES OF THE OFFENSE. (18 U.S.C. § 3553(a)(1)).

Amongst the most important sentencing factors for a court to consider are the "nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). As an initial matter, it is important to note that the defendant is not downplaying the seriousness of the offense of conviction in this case. Mr. Toro plead guilty to a serious charge. However, the facts specifically alleged against Mr. Toro, are set forth in Paragraphs 19 through 33 of the PSR. As part of Mr. Toro's plea allocution, he

stated that it was never his intention to hurt anyone, harm anyone, or harm anything. See PSR ¶ 35. It is important to note that no-one was harmed with any of the explosive materials. No-one was directly harmed by Mr. Toro's conduct and he did not engage in any acts of violence. Consequently, the nature and circumstances of the offense he plead guilty to, coupled with an evaluation of his overall conduct throughout the course of this case, justifies a sentence of Time Served.

### IV.

### A SENTENCE OF *TIME SERVED* IS APPROPRIATE (18 U.S.C. § 3553(a)(2)).

In this case, the Court must also consider the need for the sentence imposed. 18 U.S.C. § 3553(a)(2). Based on the totality of the circumstances present in this case, coupled with an analysis of each of the pertinent factors set forth in 18 U.S.C. § 3553(a)(2), which are discussed below, the Court should consider that justice is served with a sentence of Time Served.

#### (1) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

In this case, a sentence of Time Served is sufficient to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. As discussed above, Mr. Toro's crimes were non-violent and have a sentencing guideline range of 30-37 months' imprisonment, with no applicable mandatory minimum. Additionally, as discussed above, Mr. Toro accepted responsibility in this case and admitted to his criminal conduct. These factors demonstrate that a sentence of Time Served is the appropriate and just sentence for Mr. Toro.

#### (2) To afford adequate deterrence to criminal conduct.

In this case, a sentence of Time Served would afford adequate deterrence to criminal conduct. Mr. Toro has no criminal history and never served time in prison. The time that he has been incarcerated thus far in the case is an extraordinarily long time for him since he has never

been incarcerated previously. The time he has already served is sufficient to provide adequate deterrence in this case.

Additionally, as discussed above, a defendant's post-incarceration conduct should be heavily weighed in assessing deterrence, protection of the public, and rehabilitation under 18 USC § 3553(a)(2)(B)-(D). *See Pepper v. United States*, 131 S. Ct. 1229, 1242 (2011) *quoting United States v. McMannus*, 496 F.2d 846, 853 (8th Cir. 2007). Mr. Pomales' post-arrest conduct demonstrates that he does not require incarceration beyond time served in order to properly rehabilitate and refrain from future criminal conduct.

### (3) **To protect the public from further crimes of the defendant.**

For the same reasons discussed above, Time Served would be sufficient to protect the public from further crimes.

## VI.
## CONCLUSION

As set forth in the discussion above, we request that Mr. Toro be sentenced to Time Served. This is the appropriate and just sentence for Mr. Toro. In this case, such a sentence is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing under § 3553(a).

On behalf of Mr. Toro, I thank the Court for taking the time to consider our sentencing submission. We look forward to addressing the Court during the sentencing hearing.

Dated:    New York, NY
            May 12, 2019

Yours, etc.,

_____
BRYAN KONOSKI
Treyvus & Konoski, P.C.
*Attorney(s) for the Defendant*
305 Broadway, 14th Floor
New York, NY 10007
(212) 897-5832